# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

PAUL VARGAS,

      Plaintiff,

      v.                                              Civ. No. 14-00444 WJ/WPL

JEH CHARLES JOHNSON, Secretary,
Department of Homeland Security,

      Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon Defendant's Motion for Summary Judgment, filed June 18, 2015 (**Doc. 37**).   Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is well-taken and, accordingly, is GRANTED.

## BACKGROUND

Plaintiff is an employee of Homeland Security, Customs and Border Protection . He alleges he was the victim of discrimination (gender, race, and age) and retaliation when, in 2011 and 2012, he was not selected for two temporary and two permanent  positions.  His claims arise under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e et seq. ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. 621 et seq., as amended ("ADEA"), and are asserted in the Complaint as follows:

    Count One:  discrimination under Title VII based on race/national origin;
    Count Two:  gender discrimination under Title VII;
    Count Three: age discrimination under the ADEA; and
    Count Four: retaliation under both Title VII and the ADEA.

# I.      Undisputed Facts[1]

Plaintiff's case is based on five claimed incidents of discrimination.   Plaintiff first alleges that he was discriminated against based on gender and age when on June 20, 2011, he was not selected for a SCBPO ("Supervisory Custom and Border Protection Officer") position advertised under Vacancy Announcement Number MHCMP-382705-IC.   Plaintiff contends that this claim was based on gender only, but elsewhere he states that the claim is based on *both* gender and age.  *See* Ex. H, Pl. Dep. at 55-56; Ex. 24.

Second, Plaintiff alleges that he was discriminated against based on national origin and age on or about July 18, 2011when he was not selected for a SCBPO position.

Third, Plaintiff alleges that he was discriminated against based on gender and age in August 15, 2011 when he initially was not selected for a temporary Administrative Officer position.

Fourth, Plaintiff alleges that he was subjected to a hostile work environment in the October/November of 2011 when he had to work in the property office, and his duties were reduced because of gender discrimination and retaliation.

Fifth, Plaintiff alleges he was discriminated against based on age and reprisal when, on or about March 1, 2012, he was not selected for Supervisory Customs and Border Protection (CBP) Officer.

These claims can be summed up as follows:  claims 1, 3 and 4 allege discrimination based on gender, claim 2 is based on national origin; claims 1, 2, 3 and 5 allege discrimination based on age; and claims 4 and 5 allege retaliation.

---

[1]   References to supporting evidence for the facts are contained in the briefs and are omitted unless necessary.

Before recounting the remainder of the undisputed facts, the Court makes several observations about deficiencies in Plaintiff's briefing.  First, the Court will omit Plaintiff's facts characterized as "disputed" which are either non-responsive or immaterial and which appear to characterize the bulk of Plaintiff's responses to Defendant's facts.  The Court offers the following examples. In Defendant's Statement of Fact ("SOF") No. 27, Defendant states that Officers Flammia and Karr (who were each selected for one of the positions sought by Plaintiff) "had positive supervisor references and had information in their resumes about their knowledge, skills, and abilities that the selecting official believed made them the best qualified supervisor candidates."  Plaintiff's response states that "these reference checks will prove to lack transparency" yet he offers no evidence to back up that statement.  In SOF No. 30, Defendant states that Officer Flammia's resume "included working for a year and a half without direct or immediate supervision and performed supervisor functions."  Plaintiff responds that he believes the record showing this information is "over inflated" [sic] but makes no effort to present evidence that Defendant's statement is false or inaccurate.   In SOF No. 33, Defendant states that Plaintiff "had a negative supervisory reference check, was ranked lower on the Certificate of Eligibles, and had a less impressive resume as perceived by the selecting official."  Plaintiff claims that the reference check "is not properly supported" and that "testifying witnesses" (at trial, the Court assumes) will show that the statements in that check are "not factual," but Plaintiff offers no evidence by way of affidavit or deposition from these "testifying witnesses" that would create a dispute of fact on summary judgment.   The Court does not intend to take up space noting these non-responses by Plaintiff, and unless otherwise noted, the facts described below are undisputed.

Second, Plaintiff fails to comply with this Court's local rules governing responses to summary judgment motions:

> The Response may set forth additional facts other than those which respond to the Memorandum which the non-movant contends are material to the resolution of the motion. Each additional fact must be lettered and must refer with particularity to those portions of the record upon which the non-movant relies.

D.N.M.LR-Civ. 56.1(b).   Instead of including a section presenting additional facts, Plaintiff uses the discussion section responding to Defendant's arguments to pack in a mass of loosely connected additional facts which are not necessarily material or even relevant.   *See, e.g.,* Doc. 43 at 29-32.  There is a reason for this Court's local rules.  Plaintiff's format—or lack thereof—in setting out these additional facts make it difficult if not impossible, for Defendant to respond to them in its reply appropriately and individually.   While the Court must view the facts favorably to the non-movant in considering a summary judgment motion, there is no requirement that the Court do the work of Plaintiff's counsel in categorizing facts according to their relevance to the record.   *See Caffree v. Lundahl,* 143 Fed.Appx. 102, 106 (10th Cir. 2005) (court will not sift through record to find support for argument or manufacture arguments for a party).

Finally, Plaintiff's Declaration merits some attention.  *See* Doc. 44.  The eight-page Declaration contains statements pertaining to each of the five claims, but Plaintiff never actually cites to the Declaration for specific support in any of Plaintiff's responses to Defendant's statements of fact.   Rule 56 requires that a non-movant (in this case, Plaintiff) present the Court with a genuine dispute as to any material fact presented by the movant.  This Court's local rules requires that the non-movant does this by referring "with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed." D.N.M.LR-Civ.56.1(b).  Merely filing a declaration without any specific reference to it in the responsive fact section does not satisfy these requirements.  Moreover, from what the

Court can see, the Declaration is replete with information that appears extraneous to the relevant facts or that fails to create a material dispute, and the Court has no intention of hunting through this material in order to determine if there might be something material to any of the facts put forth by Defendant. *See Coleman v. Blue Cross Blue Shield of Kan., Inc.*, 287 F.App'x 631, 634-35 (10th Cir. 2008) (summary judgment affirmed where plaintiff failed to create genuine issue of material fact by relying on affidavit, but failed to specifically cite a particular part of the affidavit as a source of plaintiff's contrary factual allegation).

A.    Claim 1: June 20, 2011 Selection for Temporary Supervisor

Officer Nubia Teran, Plaintiff, and two other Officers applied for a Temporary Detail Non-Promotional Supervisor position in the administrative office not to exceed 120 days.  Santa Teresa Port Director Grace Gomez selected Officer Nubia Teran for this position.   Port Director Gomez based her selection on seventeen selection criteria, but was most concerned that the officer selected for the position have sufficient experience to assume self-inspection duties and be familiar with deposit reporting requirements.  These two criteria were important because there was an ongoing audit requiring self-inspection, and Port Director Gomez and the port's supervisor of administration were leaving, resulting in minimal training and oversight.  Officer Teran's submission stated she had undergone two prior self-audits and had full knowledge of the deposit reporting requirements.

Plaintiff's submission stated he did not have experience in either of these areas.   Plaintiff "admits" this fact, but supplies a "clarification" stating that if the job description had indicated more weight was being given to self-inspection, he "would have been able to give a more detailed response."  This response does not create any dispute regarding Plaintiff's lack of experience in self-inspection duties.   The job description listed self-inspection experience as a

requirement, Doc. 37-15, and how it was weighted on the job description has no bearing on whether or not Plaintiff had this experience.  Plaintiff does not dispute Defendant's factual contention that Plaintiff had no experience in this area, and in fact, Plaintiff's application stated that he "has never been tasked to do Self-Inspection" and "[did] not have experience" with deposit reporting requirements.  Doc. 37-19.

The Court has previously mentioned Plaintiff's Declaration in that it lacks specificity with regard to Defendants' statement of facts.  In addition, as the Court has previously mentioned, it fails to provide any support to the responses which Plaintiff does provide in the brief.  For example, Plaintiff's Declaration states that he "was well experienced in the two criteria" which were important for the temporary assignment that is part of Claim 1.  Doc. 44 (Vargas Decl.).  However, this self-serving statement is in direct and stark contrast to Plaintiff's application for that position, in which Plaintiff expressly states that he did not have experience in either of the two job criteria.  Thus, Plaintiff's bald assertion in his Declaration, without more, is not enough to create a material factual dispute on this issue.  See *Salguero v. City of Clovis*, 366 F.3d 1168, 1177 n. 4 (10th Cir.2004) (nonmovant's conclusory and self-serving affidavit, without other supporting evidence, is insufficient for the purpose of surviving summary judgment).

Nevertheless, Plaintiff believes he should have been selected based on his experience and that he was better qualified.  This temporary supervisor position did not result in increased pay or benefits and was not a permanent career advancement since it was a temporary position, and lasted less than two months.   Plaintiff does not dispute these facts, but asserts that working in the temporary position helped in the selection for other permanent job assignments.  Plaintiff's evidence of discrimination is that he "just knows" he was more qualified for the job, even though

he was unaware of Officer Teran's experience, did not know who else had applied for the position, and "believes" Port Director Gomez based her decision on gender and age. Plaintiff was born on July 15, 1971, and was 39 years of age when he did not receive the Temporary Supervisor position in June 2011.  Port Director Gomez did not know the ages of the four individuals who applied for the temporary supervisor administrative officer position at the time she made her selection.  Plaintiff alleges that he did not get this Temporary Supervisor assignment due to discrimination and age, but does not allege either national origin discrimination or retaliation for Claim 1.

Plaintiff was born on July 15, 1971, and was 39 years of age when he did not receive the Temporary Supervisor position in June 2011.  Port Director Gomez did not know the ages of the four individuals who applied for the temporary supervisor administrative officer position at the time she made her selection.  Plaintiff does not allege that he did not get this Temporary Supervisor assignment due to either national origin or retaliation.  Assistant Port Director Jesus Chavez ("APD Chavez" or "Chavez") was not responsible for the selection of this position. Plaintiff does not dispute that Chavez was not responsible for the selection of the position.  He states that management officials knew that he had influence in the selection but offers no evidence to support this statement.

B.    Claim 2: July 18, 2012 Selection for Supervisor

Plaintiff was one of seventeen eligible and qualified Officers who were candidates for a Supervisory Customs and Border Protection (CBP) Officer GS-12 position at the Port of Santa Teresa, NM, Vacancy ID 382705, in May of 2011.  The CBP Minneapolis Hiring Center reviewed all applications and ranked the 17 eligible and qualified applicants in order of assessment scores (referenced internally and herein as "Certificate of Eligibles").   These scores

(and resulting ranking on the Certificate of Eligibles) are based on an applicant's overall performance on a multiple-choice written assessment and the CBP Officer Career Experience Inventory, which is a task-based inventory that assesses the quantity and quality of specific experiences important for effective performance as a supervisor or manager of Border Protection Officers. Ana Hinojosa, then Director of Field Operations at the El Paso Field Office reviewed the applications of the seventeen qualified candidates. On May 27, 2011, Port Director Grace Gomez recommended to Director Hinojosa two candidates: Officers Gabriel Garcia and Thomas Karr. Director Hinojosa selected Officers Anthony Flammia and Thomas Karr, two men, based on the Certificate of Eligibles, the application packages, and supervisory reference checks. Doc. 37-9 (Pltff's Depo.) at 69 (Plaintiff acknowledged he was ranked lower than the chosen candidates on the Certificate of Eligibles); at 70 (Plaintiff does not know the chosen candidates' application scores); at 80-81, 83 (Plaintiff does not know the chosen candidates' backgrounds).

Officers Flammia and Karr had positive supervisor references and had information in their resumes about their knowledge, skills, and abilities that the selecting official believed made them the best qualified supervisor candidates. Plaintiff concedes this fact, but states that he "knows these reference checks will prove to lack transparency." Resp. to Deft's SOF 27. Plaintiff provides no supporting documentation for this statement and the Court considers this fact to be undisputed. Officer Flammia's resume stated he was a team member with the Alliance to Combat Transnational Threats and he had participated in multiple joint operations with ICE, DEA, Air Force Office of Special Investigations, and local and state law enforcement. Officer Flammia's resume included experience as both a CBP Agriculture Specialist and as a CBP Officer in the Ports of Wilmington, DE; El Paso, TX; and Nogales, AZ. As a CBP Agriculture

Specialist, Officer Flammia intercepted pests from coming into the United States that had never been detected before and it resulted in changing a national protocol. Officer Flammia's resume included working for a year and a half without direct or immediate supervision and performed supervisor functions.   Plaintiff does not dispute any of these facts.  Instead, he claims that he was "detailed for two months in Arizona performing the daily outbound inspections that officers perform on a daily basis," Resp. to SOF 28, 29, 30, and criticizes Flammia's resume as "over-inflated" and "exaggerated" with nothing to support that statement.

Officer Karr's resume stated he had been a member of a mobile, elite Anti-Terrorism Contraband Enforcement Team.   Director Hinojosa believed that Officer Flammia's and Officer Karr's experience showed leadership and initiative, whereas Plaintiff's experience was lacking. The selecting official believed Plaintiff's experience as a Border Patrol Agent would have been more relevant to this position if he had been a supervisor with Border Patrol.

Plaintiff also had a negative supervisory reference check by a first-line supervisor, Gilberto Arciero, was ranked lower on the Certificate of Eligibles, and had a less impressive resume as perceived by the selecting official. Plaintiff's resume included his experience as a Team Leader and Field  Training Officer, which involved duties expected of all Officers; training and access to databases; Border Patrol Agent experience in the Interior Repatriation Program and being the key person for the Combined Federal Campaign (federal employees' charitable contributions from their paychecks); and high firearms qualification.  Supervisor Arciero's reference gave Plaintiff average and below average ratings.  The supervisory  reference ratings of average and below average or unacceptable count negatively against an applicant. Arciero's reference stated he would not rehire Plaintiff because Plaintiff had permitted his personal issues to affect his work performance and attendance, and Plaintiff had a negative

annual leave balance.  *See* Doc. 37-25 (Arciero Dec.). The reference also stated that Arciero did

not recommend Plaintiff for the supervisory promotion because Plaintiff did not appear to be

sufficiently self-motivated for the position, and Plaintiff had not demonstrated to Supervisor

Arciero that he had the ability to take charge and lead a work group.  *Id.*

Plaintiff does not dispute Karr's qualifications, but advises the Court that future

testimony (presumably at trial) will refute Arciero's negative reference of Plaintiff.  *See* Resp. to

SOF 33.  Plaintiff seems to miss the point of summary judgment, which is to dispense with

meritless claims *prior* to trial by presenting some factual evidence to dispute the facts put forth

by Defendant.  The Court has no intention of denying summary judgment on claims for which

Plaintiff *might* come up with such evidence at trial.

At his deposition, Plaintiff stated that he did not know why he believes that Director

Hinojosa's selection was based on race or age:

Q.    Why is it that you think that [Director Hinojosa] selected these two men, because they are
        not Hispanic; why is that?

        A.      I don't have an answer for that right now.

        Doc. 37-9 at 73.

        and:

Q.    So you believe that [Director Hinojosa] was determined to promote non-Hispanics for
        this particular position?

        A.      Yes.

        Q.      Based on what?

        A.      That's what I believe.

        Q.      What is your belief based on?

        A.      Because –

Q.      Your personal belief?

A.      No, because I'm more qualified.

Doc. 37-9 at 84-85:18-3.

Plaintiff believes he was discriminated against because he has more experience than the selected candidates. Officer Flammia was 37 years of age, Officer Karr was 39 years of age, and both are white (non-Hispanic).  Plaintiff states his race/national origin as Hispanic.  In SOF 44, Defendant claims that Director Hinojosa made the selections underlying Claim 2 in June 2011 when Plaintiff was age 39.  Plaintiff disputes this fact, claiming that he had turned 40 before this selection was made, and this dispute appears to be material and relevant.  The evidence supporting Defendant's SOF 44 indicates that Plaintiff turned 40 three days before the selection was announced.  Doc. 37-9 at 73:18-25; Doc. 37-11, Resp. to Req. for Admission No. 7 (Plaintiff turned 40 three days before learning that Officers Flammia and Karr were selected).

For this claim, Plaintiff does not allege that his non-selection was due to gender or retaliation.  Plaintiff acknowledges that this is the only time he is aware that Director Hinojosa, a Hispanic woman, allegedly discriminated based on national origin.   Plaintiff does not dispute facts indicating that the race, national origin, and ages of the candidates were not known to Director Hinojosa and had no bearing on her selections.  APD Chavez was not responsible for the selection of this position.  *See* Doc. 37-9 at 140:1-3 (Gomez was selecting official for the position).

C.      Claims 3: August 15, 2011 Selection for Temporary Assignment

On July 18, 2011, Plaintiff contacted an EEO counselor for the first time.   In August 2011, Plaintiff states he applied for a Temporary Assignment (Administration Officer) at Santa Theresa, NM.  This temporary position was a purely lateral assignment for an Officer with no

change in pay or benefits.  Plaintiff failed to submit his application to the selecting official,

Acting Port Director Fred Hutterer ("APD Hutterer" or "Hutterer") contrary to Hutterer's

instructions.  APD Hutterer only received applications from Officer Soledad Gallegos and

Officer Erika Pedroza.

Plaintiff claims that he gave his application to his supervisor, Supervisory CBP Officer

Perry Harp ("SCBPO Harp" or "Harp") and that Harp forwarded the application to APD Chavez,

but Chavez did not forward it to Hutterer.  Plaintiff believes Chavez did not forward the

application because he wanted Officer Pedroza to be selected.  However, Plaintiff offers no

evidence to counter APD Chavez' statement that he did not recall receiving Plaintiff's

application.  *See* Doc. 3706, ¶ 17.   A statement by SCBPO Harp would have collaborated

Plaintiff's claim that Harp said he had forwarded the application to Chavez, but without this,

there is no evidence that sets up an inference that Chavez intentionally failed to forward

Plaintiff's application to APD Hutterer.  In his deposition, Plaintiff claimed that Hutterer had

"sent an e-mail out" saying that Plaintiff had given an application to SCBPO Harp and that Harp

have it to APD Chavez, *see* Doc. 37-9 at 114:22-25, but other than this sheer hearsay statement

by Plaintiff, there is nothing to support the existence of that e-mail.  Thus, the Court must accept

as undisputed Chavez' statement that he did not recall receiving Plaintiff's application.  As a

result, no factual dispute exists which might suggest that APD Chavez did not forward Plaintiff's

application because he wanted Officer Pedroza to be selected.

APD Hutterer filled the temporary assignment based on seniority.  Officer Gallegos had

more seniority than Officer Pedroza and was therefore initially selected for the position, but

because she had to attend out-of-state training, Hutterer selected the other applicant, Officer

Pedroza.

In SOF 59, Defendant states that when APD Hutterer became aware that Plaintiff had applied for the temporary position, Hutterer selected Plaintiff.  Plaintiff disputes this fact and claims that he was never selected for this temporary position.  Resp. to SOF 59, Doc. 44 (Vargas Decl., ¶ 29).

Officer Gallegos was older than Plaintiff by 16 years, but Officer Pedroza had less seniority than Plaintiff and was nine years younger.  APD Hutterer did not know the ages of the three individuals who applied for the temporary position.  The temporary position in mid-August 2011 lasted for no longer than the end of the fiscal year (beginning of October 2011), which is about 45 days.  APD Chavez was not responsible for the selection of this position.  *See* Doc. 37-9 at 97:5-7 (Vargas Dec., stating that APD Hutterer made the selection in August of 2011).

Plaintiff is not claiming the selection process was in retaliation for his contacting an EEO counselor.

D.      Claim 4: October/November 2011 Duties/Desk Location

On September 15, 2011, Plaintiff submitted a formal EEO complaint based on his non-selection for the June 20, 2011, Temporary Supervisor position; his non-selection for the July18, 2011 Supervisor position, and his initial non-selection on August 15, 2011, for Temporary Assignment, claiming discrimination based on race, national origin, gender, and age.

In October of 2011 Plaintiff and Officer Hugo Montes received bid assignments of Administrative Officer as a result of on an annual "bid and rotation" process at the Port of Santa Teresa, based on seniority and bid preferences.  This was a lateral assignment, not a promotion.  Doc. 37-5 (Hutterer Decl.), ¶18.  Officers in order of seniority could bid on their first, second, third and maybe fourth choices for assignments for the next year.  "Bid and rotation" ("B&R")

selections were based on seniority, officer preference and the number of slots available to be filled.  *Id.*

Plaintiff got one of the lateral assignments and was told to use the desk in the property office due to lack of space in the nearby administrative office.  When Plaintiff won the Administrative Officer bid, the desks in the administrative office were occupied by other employees, including a pregnant officer.   Plaintiff alleges, however, that APD Chavez moved him to the property office because he did not want males to be in the administrative office, and bases his gender discrimination and hostile environment allegations for Claim 4 on having to work at a desk in the property room instead of the administrative office.   Doc. 37-9 at 130:1-4.

The property office is an interior office of 8 feet by 20 feet and was next to or down the hall from the administrative office.  There was always a desk in the property office; it was not placed there for Plaintiff.   In the past, APD Chavez himself had used the property office as his office, as an Assistant Port Director.  Plaintiff does not dispute these facts.

In November 2011 the pregnant Officer who was using the administrative office left for maternity leave. Within two weeks, in November 2011 APD Hutterer moved Plaintiff into the administrative office, and Plaintiff used the property office as needed for certain administrative duties.  After getting this assignment, Chavez told Plaintiff he would assume the duties of a Property/Fleet officer, which had been part of the collateral duties of CBP Officers, but would now be included in this Administrative Officer position as part of this "bid and rotation" cycle. *See* Doc. 37-35.  Prior to this "bid and rotation" announcement, the duties of a Property officer were performed by a CBPO, as a collateral job, and the duties of Fleet officer were carried out by another CBPO as a collateral job.  However, with this "bid and rotation" announcement, both sets of duties were included in the Administrative Officer duties.  Doc. 37-5, ¶22.  The

Administrative Officer position included statistics, property, inventory, fleet management, purchase card, time and attendance, training (including pre- and post- academy, virtual learning center, and unification training), as well as providing support for other units as necessary. Plaintiff contends that being told he would be the Property/Fleet officer minimized and degraded the full scope of his duties and responsibilities of the Administrative Officer position.   Resp. to SOF 76.

Plaintiff does not know, or claim to know, if it was the intent of APD Chavez to have property/fleet be the initial part of Plaintiff's rotation through the different administrative officer duties, or how long Chavez intended Plaintiff to initially work in the property office.  Chavez gave Plaintiff full access to all databases needed to carry out all administrative officer duties, and Plaintiff used these databases to perform all administrative duties.

In October/November 2011, APD Chavez had no knowledge of Plaintiff's EEO complaint.  This fact is undisputed.  On November 2, 2011, Plaintiff amended his EEO complaint to include Claim 4 based on alleged retaliation by APD Chavez.

E.       Claim 5: March 1, 2012 Selection for Supervisor

Plaintiff was one of 24 candidates for four Supervisory CBP Officer GS-13 positions in El Paso, Texas.  The CBP Minneapolis Hiring Center reviewed all applications and created a "Certificate of Eligibles."  Plaintiff was ranked number 20 of 24 on the Certificate of Eligibles. On January 13, 2012, the El Paso Port Director recommended four candidates to Director Hinojosa: Officers Juan Carrillo, Jose Pinela, Peter Williams, and Jesus Salgado.  The Port Director's recommendation stated that he, Assistant Port Directors, and Watch Commanders, reviewed all documentation on the eligible candidates, considered test scores, resumes, and based on the totality of the circumstances, selected the four with the desired technical expertise

and leadership abilities to help develop young officers and promote the mission plans.  *See* Doc.

37-9 (Vargas Depo.) at 183-84 (Plaintiff stating that he was lower on the Certificate of Eligibles

than any of the selected candidates.

On January 20, 2012, Director Hinojosa selected the four candidates recommended by the

Port Director including Officer Salgado as a candidate whom she believed was better qualified

than Plaintiff.  Plaintiff claims Director Hinojosa selected Officer Salgado and not Plaintiff based

on age discrimination and retaliation because Plaintiff "just knows" he was more qualified:[2]

Q.    What makes you believe that you were more qualified than any of these gentlemen that
      were selected?

      A.      . . . --- I worked with him, so I know.

      Q.      Okay.

      A.      I mean, I just know.

      Q.      Tell me the difference between the two of you, experience-wise.

A.    I should have more time in. I know he hasn't worked in all the capacities and levels that I

      have . . . I know for a fact, it's my personal opinion, being there working with him, that

      I'm above and beyond more qualified than Mr. Salgado.

Doc. 37-10 at 62:8-24.  Officer Salgado was ranked 10 of 24 on the Certificate of Eligibles.

Salgado's resume included being a member of the Anti-Terrorism Contraband Enforcement

Team on the Mexican border and participating in special operations with various outside

agencies.  His resume also included creating a port-wide spreadsheet used by the Port of El Paso,

saving up to an hour per case, and being a course developer instructor for advanced admissibility

secondary processing, which included identifying nationwide training needs and participating in

planning and developing the agency's overall mission and all organizational elements and

---

[2] For Claim 5, Plaintiff takes issue only with the selection of candidate Salgado.  Doc. 37-9 at 180:11-6.

structure, and the agency's Strategic Plan.  Plaintiff's resume described his recent duties as an Administrative Officer at the Port of Santa Teresa, and his prior Border Patrol Agent experience.

In January 2012 Plaintiff was 40 years old; two selectees were older than Plaintiff (ages 51, 42) and two were younger (ages 31 (Salgado), 36).  Director Hinojosa was the management official who had attended Plaintiff's EEO mediation on August 31, 2011 -- about five months prior to this selection.   Director Hinojosa stated that if she had recalled the EEO mediation involving Plaintiff, she did not consider this EEO activity reviewing the application materials of the eligible candidates and in selecting the candidates to fill the supervisor positions in January 2012.  Doc. 37-4 (Hinojosa Decl., stating that while she had attended Plaintiff's EEO mediation five months prior, she "definitely did not consider his EEO filing of any concern in making this selection"  and would not "hold it against anyone" to "exercise their avenues for relief").  Director Hinojosa stated that she was unaware of the ages of those listed on the Certificate of Eligibles when she selected the four candidates.  Plaintiff offers no facts to rebut Director Hinojosa's statements.

APD Chavez provided a positive reference for Plaintiff for this application.  *See* Doc. 37-6 (Chavez Dec. ¶37 (stating that he gave scores of 1 and 2, which meant exceptional and above average).[3]  Plaintiff "denies" this fact and claims he was "denied the opportunity to review said reference check record."  Resp. to Deft's  SOF 95.  Plaintiff's comment makes no sense since the relevant documents pertaining to the reference check in question are attached to Defendant's motion as Docs. 37-6 and 37-31.  Thus, this fact is undisputed.

On March 21, 2012, Plaintiff amended his formal EEO complaint, and this claim was added on April 5, 2012. (Exs. K & 23.)

---

[3] Chavez also gave two scores of "5" which meant "unable to evaluate," and is not counted.  Doc. 37-6, ¶37; Doc.  37-31(supervisor reference check).

## II.    Legal Standard

Defendant seeks summary judgment on all of Plaintiff's claims.  Summary judgment is appropriate in the absence of a genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To defeat summary judgment, the non-movant must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-movant may not rely upon the denials of its pleadings, but is required to tender specific, admissible facts without relying on speculation.  *Celotex*, 477 U.S. at 324; Bones v. *Honeywell Int'l, Inc*., 366 F.3d 869, 876 (10th Cir. 2004). That requires the non-movant to "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

### DISCUSSION

The following sums up the grounds for Plaintiff's five claims:

- In Claim 1, Plaintiff claims that he was not selected for the temporary supervisor administrative officer position in June 2011 because of gender discrimination;

- In Claim 2, Plaintiff claims he was not promoted to supervisor in July 2011 due to national origin discrimination;

- In Claim 3, Plaintiff claims that he did not receive the temporary assignment in August 2011 because of gender discrimination;

- For Claims 1, 2 and 3, Plaintiff also alleges discrimination based on age;

- In Claim 4, Plaintiff claims that he was discriminated based on gender and exposed to a hostile environment in October/November when he was assigned a particular desk and given particular responsibilities which he felt minimized his duties and;

- Plaintiff also alleges retaliation under Title VII and the ADEA in Claim 4, as well as in Claim 5 which is based on a March 2012 selection for supervisor.

The Court's analysis will address the claims by category, according to the different stages of the *McDonnell-Douglas* inquiry.  For all of Plaintiff's claims, the Court follows the entire *McDonnell-Douglas* inquiry even where a claim fails early in the analysis.

Summary judgment motions in employment discrimination cases are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205-06 (10th Cir. 2000). Under *McDonnell Douglas*, Plaintiff must first establish a prima facie case of discrimination, which creates a presumption that the employer unlawfully discriminated or retaliated against the employee. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). The burden then shifts to the defendant to articulate a facially nondiscriminatory reason for the challenged acts.  *Id*. at 506-07.  The defendant is not obligated to litigate the merits of its reasoning, nor need it prove that its reasons were bona fide. *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992).

Ultimately, the burden shifts back to the plaintiff to prove that the employer's stated reason was a pretext for discrimination. *MacKenzie v. Denver*, 414 F.3d 1266, 1277-78 (10th Cir. 2005).  A plaintiff may demonstrate pretext "by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and thence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

## I.      Gender and National Origin Claims (Claims 1, 2, 3 and 4)

Plaintiff alleges discrimination based on gender in Claims 1, 3 and 4; and based on national origin in Claim 2.   Defendant contends that all of Plaintiff's claims fail at different stages of the shifting burden analysis.   Claims under both Title VII and the ADEA are analyzed

under the familiar burden-shifting requirements of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Jones v. Okla. City Public Sch.,* 617 F.3d 1273, 1278 (10th Cir. 2010); *Garrett v. Hewlett Packard Co*., 305 F.3d 1210, 1216 (10th Cir. 2002); *Pastran v. K-Mart Corp*.,210 F.3d 1201,1205 (10th Cir. 2000) (cases interpreting the ADA retaliation provisions are persuasive authority in Title VII retaliation cases because the statutory provisions are substantially similar); *O'Connor v. Consolidated Coin Caterers Corp*., 517 U.S. 308 (1996) (assuming that Title VII's McDonnell Douglas burden shifting framework applies to ADEA case); *see also E.E.O.C. v. O & G Spring and Wire Forms Specialty Co*., 38 F.3d 872, 881 (7th Cir. 1994) (discussion of cases that have construed Title VII as persuasive authority when interpreting the ADEA).

  A. <u>Prima Facie Case</u>

  The plaintiff in both ADEA and Title VII cases bears the initial burden of setting forth a prima facie case of discrimination.  The elements of each closely parallel the other, and in either case the plaintiff must show: 1) he is a member of the class protected by the statute; 2) he suffered an adverse employment action; 3) he was qualified for the position at issue; and 4) he was treated less favorably than others not in the protected class. *See Thomas v. Denny's Inc*., 111 F.3d 1506, 1510 (10th Cir.1997) (race); *Corneveaux v. Cuna Mut. Ins. Group*, 76 F.3d 1498, 1502 (10th Cir.1996) (age); *Jones v. Unisys Corp*., 54 F.3d 624, 630 (10th. Cir.1995) (age); *Cole v. Ruidoso Municipal Sch*., 43 F.3d 1373, 1380 (10th Cir.1994) (gender).

  In a failure to promote case, the fourth element of the prima facie case may be shown if the position at issue remained open or was filled with a non-minority.  *Amro v. Boeing Co.,* 232 F.3d 790, 796 (10th Cir. 2000); *Kendrick v. Penske Transp. Servs., Inc*., 220 F.3d 1220, 1229 (10th Cir. 2000) (reciting prima facie case for failure to hire, failure to promote or discharge case); *see also Rivera v. City and County of Denver,* 365 F.3d 912, 920 (10th Cir. 2004).   For

age discrimination cases, the comparison to a person outside of the protected class in the fourth

prong of the prima facie case is unnecessary to create an inference of discriminatory discharge.

*See Perry v. Woodward*, 199 F.3d 1127,1140 (10th Cir. 1999).[4]

        1.      <u>Reverse-discrimination (Claims 1 & 3)</u>

Claims 1 and 3 involve temporary positions which were given to women instead of

Plaintiff (to Nubia Teran for the position in Claim 1, and to Soledad Gallegos and Erika Pedroza

in Claim 3).   As Defendant observes, Plaintiff does not satisfy the first prong of a prima facie

discrimination case because as a male, he is not a member of the "traditionally disfavored class"

and is actually alleging a reverse discrimination case. *Adamson v. Multi Community Diversified*

*Services, Inc.,* 514 F.3d 1136, 1150(10th Cir. 2008).

The McDonnell Douglas prima facie case formulation must be modified when a plaintiff

pursues a reverse discrimination claim. *Notari v. Denver Water Dep't*, 971 F.2d 585, 588 (10th

Cir. 1992).  It is not enough for a reverse gender discrimination plaintiff under Title VII merely

to allege that he was a qualified man who was treated differently than a similarly situated

woman; instead, he must allege and produce evidence sufficient to support a reasonable

inference that, but for his status as a man, the challenged decision would not have occurred.

*Adamson v. Multi Community Diversified Services, Inc*., 514 F.3d 1136, 1150(10th Cir. 2008)

        2.      <u>Non-Selection for temporary positions is not an adverse action (Claims 1 & 3)</u>

---

[4]  The prima facie case is a flexible standard that may be modified to relate to different factual situations. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).  The fourth element is sometimes framed more broadly, as simply requiring a showing of "circumstances giving rise to an inference of discrimination."  *See Salguero v. City of Clovis,* 366 F.3d 1168, 1175 (10th Cir. 2004); *see Hysten v. Burlington Northern & Santa Fe Railway Co*., 296 F.3d 1177, 1180 (10th Cir. 2002) (stressing that "courts must be sensitive to the myriad of ways such an inference can be created"; *see also Exum v. U.S. Olympic Committee*, 389 F.3d 1130, 1134, n.6 (10th Cir. 2004) (The precise articulation of what is required to establish a prima facie case may vary somewhat depending on the context of the plaintiff's claim).

For both Claims 1 and 3, Defendant contends that Plaintiff's prima facie case fails on the second requirement as well in that his non-selection for temporary positions is not an adverse action.

To be adverse, the challenged action must be a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Daniels v. United Parcel Serv., Inc.,* 701 F.3d 620, 635 (10th Cir. 2012) (internal quotation marks omitted) (emphasis in original). An action is not adverse simply because the employee would have preferred a different course. *Id.* A "truly lateral" transfer that "involves no significant changes in an employee's conditions of employment" is not an adverse action. *Sanchez v. Denver Pub.Sch.,* 164 F.3d 527, 532 n.6 (10th Cir. 1998); *see also Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232 (11th Cir. 2001) (police department's designation of "officer in charge" was not a promotion and therefore, remove from that designation as not "adverse employment action" because it did not involve increase in salary or benefits or lead to opportunities for advancement).

The temporary assignment in Claim 1 would have lasted less than two months, and in Claim 3, would have lasted about 45 days. The evidence offered by Defendant shows that both of these positions were lateral transfers and that neither involved an increase in pay or benefits or promotion potential. They were essentially reassignments. *See* Doc. 37-7, ¶ 4; Doc. 37-3, ¶5. As such, the positions for which Plaintiff was not selected in Claims 1 and 3 cannot be considered adverse employment actions, which means that Plaintiff cannot meet that prong of a prima facie case of discrimination.

3.   Plaintiff's desk location and job responsibilities in October/November 2011 (Claim 4) did not constitute adverse employment actions

22

It is undisputed that Plaintiff's desk location was in the property room for only a couple of weeks.  *See* Doc. 37-9 (Vargas Depo.) at 133:19-24 ("Yes, sir, I was forced to be there [in the property room] for a couple of weeks").   Plaintiff does not provide any evidence on how long APD Chavez intended to keep Plaintiff working in the property office, or whether Chavez meant property/fleet duties be the initial part of Plaintiff's rotation through the different administrative officer duties.

The "bid and rotation" position underlying Claim 4 was considered a lateral assignment, and not a promotion.  Doc. 37-5, ¶ 18.   *See Sanchez,* 164 F.3d at 532 n.6 (purely lateral transfer involving insignificant alteration in job responsibilities was not adverse employment action). Reassignment or lateral transfer may constitute an adverse employment action where an individual receives less pay, has less responsibility or is required to utilize a lesser degree of skill than his previous assignment.  *Stinnet v. Safeway, Inc.,* 337 F.3d 1213, 1217 (10th Cir. 2003). Here, the location of Plaintiff's desk in the property office for two weeks does not amount to a materially adverse employment action.  *Cmp. Heno v. Sprint/United Management Co*., 208 F.3d 847 (10th Cir. 2000) (moving plaintiff's desk, monitoring her phone calls, being "chilly" towards her, and suggesting she might do better in a different department did not affect plaintiff's employment  status).   Also, including Property and Fleet officer duties in the Administrative Officer position does not qualify as an adverse employment action.  *See Haugerud v. Amery Sch. Dist*., 259 F.3d 678, 691 92 (7th Cir.2001) (additional job responsibilities do not qualify as adverse actions); *Haugerud v. Amery Sch. Dist*., 259 F.3d 678, 691-92 (7th Cir.2001) (additional job responsibilities do not qualify as adverse actions).

4.     Plaintiff was not qualified for the supervisor position (Claims 1 & 2)

Plaintiff's evidence that he was qualified for the temporary supervisor administrative officer position in Claim 1 is that he "just knew" he was more qualified, even though he was not aware of the experience of the other candidates.  *See Aragon v. King Soopers, Inc.*, 19 F. App'x 806, 810 (10th Cir. 2001) (unverified speculation does not establish a prima facie case).  Plaintiff offers no facts to dispute his own admissions on his job application for the temporary assignment in Claim 1, or to dispute the evidence presented by Defendant indicating that Officer Teran's experience in both of the sought criteria for the job.  Doc. 37-3 (Gomez Dec., ¶ 18; Doc. 37-16 (Teran submission).   As a result, Plaintiff cannot meet the prima facie requirement for Claim 1 that he was qualified for the supervisor position.

For Claim 2, it is undisputed that Plaintiff ranked lower on the application scores than the two men who were selected, and thus Plaintiff cannot make out a prima facie case showing that he was treated less favorably than the men who were selected because he is Hispanic.

5.      Less favorable treatment than others not in protected class (Claims 1, 2 and 3)

As a male who does not belong to a protected class, Plaintiff must produce evidence sufficient to support a reasonable inference that, but for his status as a man, the challenged decision would not have occurred.  *Adamson v. Multi Community Diversified Services, Inc.*, 514 F.3d 1136, 1150(10th Cir. 2008).  For Claim 1, no such evidence has been presented because it is undisputed that Plaintiff was on unequal footing with Officer Teran regarding qualifications and experience. For Claim 3, Plaintiff attempts to build a prima facie case on his insistence that he did submit an application for the job and that the application was forwarded by SCBPO Harp to Assistant Port Director Jesus Chavez, but Chavez did not forward the application to APD Hutterer because Chavez wanted Officer Erika Pedroza to get the position.   As mentioned in the section recounting the undisputed facts, Plaintiff presents no evidence to counter Chavez'

24

statement that he never received the application, and thus, Chavez' statement that he never received Plaintiff's application remains undisputed.  Without such evidence, there is nothing to support the inference that APD Chavez intentionally failed to pass along Plaintiff's submission to APD Hutterer in order to ensure that Ms. Pedroza's chances of getting the position.

B.    Defendant's Legitimate Reasons for the Challenged Actions

Defendant's burden under the second step of McDonnell-Douglas is "exceedingly light," and is discharged by articulating a facially nondiscriminatory explanation for its actions. *Anaeme v. Diagnostek, Inc*., 164 F.3d 1275, 1279 (10th Cir. 1999).

1.    Temporary supervisor position (Claim 1)

Officer Nubia Teran was selected from the four CBP Officers who applied for this position, including Plaintiff.   Management was most interested in two of 17 criteria listed for the job: ability to fully assume self-inspection duties (that is, audit), and familiarity with deposit reporting requirements.  Plaintiff admitted he did not have experience in these two criteria, where Officer Teran did have this experience.  Her submission states that she had gone through two prior Self-Audits and had full knowledge of the deposit reporting requirements.  *See* Doc. 37-16. Plaintiff believes he should have been selected based on his experience at that port, his military experience, and his Border Patrol Agent experience.  However, in his submission for this position, Plaintiff stated he had not done a self-inspection, but had assisted other officers and agents with these tasks in reviewing immigration cases and policies.  He also noted he did not have experience with the deposit reporting network or deposit procedures.  *See* Doc. 37-19. Defendant had legitimate, nondiscriminatory reasons for not selecting Plaintiff for this temporary position.

2.    Permanent supervisory position (Claim 2)

Officer Karr and Officer Flammia were selected over Plaintiff and 14 other candidates on the Certificate of Eligibles for permanent supervisory promotions. (SOF 21, 26.) Officer Flammia and Officer Karr were ranked higher than Plaintiff, and thus scored better on their Officer Promotional Assessments.

Plaintiff concedes all of the facts presented by Defendant on this claim, yet still maintains that he has "more than enough of experience." Doc. 43 at 36. Officer Flammia's resume stated he was a team member with the Alliance to Combat Transnational Threats and he had participated in multiple joint operations with ICE, DEA, Air Force Office of Special Investigations, and local and state law enforcement. Plaintiff takes issue with Flammia's experience as a CBP Agriculture Specialist and as a CBP Officer in Texas and Arizona, stating that Flammia's duties as an agriculture specialist duties "to "look for bugs and the entry of unauthorized foods, does not qualify him for the position." Doc. 43 at 35. Second-guessing the job duties sought by employer, however, does not create a dispute about the legitimacy of Defendant's reasons for giving Flammia the position instead of Plaintiff.

Plaintiff's resume is markedly distinct from those of Officers Flammia and Karr, and listed Plaintiff's experience as a Team Leader and Field Training Officer (duties expected of all Officers), training and access to databases, and Border Patrol Agent experience of participating in the Interior Repatriation Program, being the key person for the Combined Federal Campaign and a high firearms qualification. The selecting official believed Plaintiff's experience as a Border Patrol Agent would have been more relevant to this position if he had been a supervisor with Border Patrol.

It is also undisputed that both Officers Flammia and Karr had positive supervisory references, where Plaintiff had a negative supervisory reference check, was ranked lower on the

Certificate of Eligibles, and had a less impressive resume as perceived by the selecting official. Plaintiff's negative supervisory reference check was from Supervisory CBP Officer Gilberto Arciero, Plaintiff's first-line supervisor for approximately a year or more. Arciero gave Plaintiff average and below average ratings, which count against an applicant. Other negative aspects of Supervisor Arciero's reference included Plaintiff's negative annual leave balance. Supervisor Arciero noted he would not rehire Plaintiff because Plaintiff had permitted his personal issues to affect his work performance and attendance. Arciero's reference stated he did not recommend Plaintiff for the supervisory promotion because Plaintiff did not appear to be sufficiently self-motivated for the position, and Plaintiff had not demonstrated to him that he had the ability to take charge and lead a work group. With these undisputed facts, Defendant had provided an ample number of legitimate reasons for not selecting Plaintiff for the permanent supervisory position.

       3.     <u>Temporary assignment (Claim 3)</u>

The selection for this temporary lateral assignment to Administration Officer was based solely on seniority. It is undisputed that Officer Pedroza had less seniority than Plaintiff and was nine years younger than Plaintiff. It is also undisputed that instructions for submitting an application to this job required applicants to send their submissions directly to them, with a supervisory recommendation. Doc. 37-5, ¶3. It is also undisputed that Plaintiff did not do this and that Plaintiff decided to submit his application contrary to those instructions. Doc. 37-9 at 97:8-24 ("That's not how you do it. You do it by team command"). Plaintiff presents no evidence to counter the fact that he was not initially selected because the selecting official, APD Hutterer, did not receive Plaintiff's application, which constitutes a legitimate reason for non-selection.

There is a factual dispute that arises in this claim.  Defendant states that when Hutterer did become aware of Plaintiff's interest in the temporary assignment, he took him at his word that he had submitted an application and gave Plaintiff the temporary position.  SOF 59.  Plaintiff claims he was never selected for this position.   The Court finds that this dispute of fact could allow Claim 3, based on gender discrimination to proceed to the next stage of the analysis, except that the Court has also found that Plaintiff has failed to show that non-selection for this temporary assignment constituted a material adverse action.

      4.      <u>Desk location/duties (Claim 4)</u>

Plaintiff got this lateral assignment on a "bid and rotation" process.  When Plaintiff started his year as Administrative Officer in October 2011, he was initially assigned to a desk in an 8' x 20' room next to the administrative office due to lack of space in the administrative office.  When Plaintiff was assigned to this position, the desks in the administrative office were occupied.  Plaintiff spent two weeks in the property office before he was assigned to the administrative office in November 2011 when a pregnant Officer using the administrative office left on maternity leave that month.  Plaintiff admitted he did not know how long he was intended to work in the property, and he would have to use the property office during the course of that year anyway as an administrative officer for certain administrative duties.  There had always been a desk in the property office; a desk was not moved in there just for Plaintiff.  In fact, in the past Assistant Port Director Chavez had used that office as his office, as Assistant Port Director.

Defendant has easily satisfied its burden of producing legitimate, non-discriminatory reasons for the actions taken in Claims 1, 2, 3 and 4.

      C.      <u>Pretext:  Last Step in *McDonnell-Douglas* Analysis</u>

The ultimate test in discrimination cases is whether a plaintiff has produced enough creditable evidence to persuade the trier of fact that the defendant acted with discriminatory intent and that such intent caused plaintiff's injury. *Dodoo v. Seagate Technology, Inc.*, 235 F.3d 522, 528 (10th Cir. 2000).   Once a defendant has articulated a legitimate nondiscriminatory reason for its actions, the plaintiff must then show that defendant's proffered reasons are pretextual.  *See Jones*, 54 F.3d at 630. *Sanchez v. Denver Public Schools*, 164 F.3d at 531.

Liability under both Title VII and the ADEA depends on whether the protected trait actually motivated the employer's decision.  Thus, for the Title VII claims asserted here alleging discrimination based on gender or national origin in claims 1, 2, 3 and 4, Plaintiff is required to show that gender or national origin was a motivating factor in Defendant's actions.  *See Hampton v. Dillard Dep't Stores, Inc.,* 247 F.3d 1091, 1111 (10th Cir. 2001) (jury instruction properly stated that the plaintiff bears the burden of establishing that race was a motivating factor in the defendant's decision to discriminate); *Anaeme v. Diagnostek, Inc.,* 164 F.3d 1275, 1282 (10th Cir.1999) (noting that it is plaintiff's "ultimate responsibility" to persuade the jury that "race was a motivating factor in the employment decision").

With Defendant having shown legitimate, non-discrimination reasons for its actions, the question is whether Plaintiff can show these reasons were pretextual by showing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could "rationally find them unworthy of credence and thence infer that the employer did not act for the asserted non-discriminatory reasons."  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

In the face of Defendant's pretext analysis in the motion, Plaintiff says merely that he "has clearly showed that he was discriminated by Defendant in his claims 1, 2, 3 and 4 as stated

above." Doc. 43 at 43. However, Plaintiff presents no such evidence of pretext anywhere in the response brief or the attached exhibit (the Vargas Decl.) For Claim 1, he claims he "just knew" he was more qualified than Officer Teran. An employee's opinion about his qualifications does not give rise to a material factual dispute. *See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1329-30 (10th Cir. 1999). Port Director Grace Gomez honestly believed she selected the best qualified candidate. Doc. 37-3, ¶12.

For Claim 2, Plaintiff's belief that he had more experience that Officers Flammia and Karr is not enough to show pretext, and it is certainly not enough to overcome the substantive evidence that Officers Flammia and Karr had better qualifications and reference checks. *See Etsitty v. Utah Transit Auth.,* 502 F.3d 1215, 1225 (10th Cir. 2007 (mere conjecture not enough to show pretext).

The selection for Claim 3 was based on seniority. However, as mentioned previously, there is no evidence that Plaintiff submitted an application to anyone for this position, and thus Plaintiff cannot show that Hutterer's selection of either Gallegos or Pedroza was pretextual. Moreover, in a reverse discrimination case, instead of showing she belongs to a protected class, a plaintiff must "establish background circumstances that support an inference that the defendant is one of these unusual employers who discriminates against the majority. *McDonald v. Corrections Corp. of America*, 181 F.Supp.2d 1274, 1280-81 (D.N.M.,2002) (citing *Notari v. Denver Water Dep't,* 971 F.2d 585, 589–590 (10th Cir.1992). To the extent that Claim 3 is alleged on the basis of gender, Plaintiff has not provided any facts that would support such an inference. The Court has also found that Plaintiff has not satisfied a prima facie case for Claim 3 (see discussion above). However, even if the Court assumes that Plaintiff has done so, Claim 3

would still fail based on Plaintiff's failure to show evidence of pretext.  *See Selenke v. Med. Imaging of Colo*., 248 F.3d 1249, 1260 (10th Cir. 2001) (establishing a prima facie case is not sufficient to avoid summary judgment, and instead, plaintiff must offer evidence that the defendant's reason is a pretext for discrimination).

For Claim 4, Plaintiff states he was in the property office for two weeks because he believed Assistant Port Director Chavez did not want to afford males the opportunity to be in the administrative office.  However, two male Officers were chosen to be Administrative Officers for that year, Plaintiff and Officer Hugo Montes.  Doc. 37-5 , ¶20, and Doc. 3706, ¶23.   Plaintiff does not know how long Assistant Port Director Chavez intended him to work in the property office, or to have only certain administrative duties.  The position at issue was initially supposed to be for two years, but ended up being for one year, until the next "bid and rotation" took effect in October 2012.  Doc. 37-5, ¶24.  However, it is undisputed that Plaintiff was moved into the Administrative Office within two weeks of starting this "bid and rotation" position, and so even assuming this placement was an adverse action, Plaintiff's claim of discrimination based on either gender or retaliation fails.  *See Semsroth v. City of Wichita*, 555 F.3d 1182, 1186 (10th Cir. 2009) (temporary denial of request was not actionable in light of the favorable action eventually taken).  Also, it was Chavez who gave Plaintiff full database access to perform all administrative functions and keys to rooms necessary for administrative duties.

Plaintiff states that "[t]estimony from SCBPO Harp will show that the females in the administrative office had advised Harp that they had come to a decision not to have Plaintiff in that office" and that is the reason why APD Chavez told Plaintiff he had to be in the property office.  However, the record contains no statement, declaration or affidavit from SCBPO Harp

and as a result, Plaintiff has presented no evidence at all that his very short and temporary placement in the property office was pretextual for his being a male.

Based on the foregoing, the Court finds that Plaintiff cannot establish a prima facie case for gender or national origin discrimination in Claims 1, 3 and 4 under Title VII.  Plaintiff has not shown any evidence of pretext for Claims 1, 2, 3 and 4 (even assuming Plaintiff has made out a prima facie case for Claim 2) in responding to Defendant's legitimate, non-discriminatory reasons for actions taken.

**II.      Age Discrimination Claims (Claims 1, 2, 3 and 5)**

In Claims 1, 2, 3 and 5, Plaintiff alleges that Defendant discriminated against him based on age.

**A.      Prima Facie Case**

To state a prima facie under the ADEA, which prohibits discrimination based on age, Plaintiff must show that (1) he is a member of the class protected by the statute, which means that he was 40 years of age or older at the time of the alleged conduct; (2) he suffered an adverse employment action; (3) he was qualified for the position at issue; and (4) he was treated less favorably than others not in the protected class, that is, those who are under 40 years of age). *Jones v. Okla. City Pub. Sch*., 617 F.3d 1273, 1279 (10th Cir. 2010); 29 U.S.C. § 633a; *see also Beaird v. Seagate Technology, Inc.,* 145 F.3d 1159, 1165 (10th Cir. 1998) (fourth element of prima may be established "through circumstantial evidence that the plaintiff was treated less favorably than younger employees during the [RIF]." *Id.*

To bring a claim based on disparate treatment, Plaintiff must show that age actually motivated Defendant's decision—i.e., that "age was the 'but-for' cause of the employer's adverse decision," not just a motivating factor.  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176

(2009). *Jones v. Okla. City Public Sch.,* 617 F.3d 1273, 1278 (10th Cir. 2010) (noting that the Tenth Circuit "has long held that a plaintiff must prove but-for causation to hold an employer liable under the ADEA") (citations omitted).

1.    No viable claims for actions taken prior to Plaintiff's 40th birthday (Claims 1 & 2)

Plaintiff turned 40 on July 15, 2011.  He cannot assert a viable prima facie case for age discrimination prior to that time.  *See Mattioda v. White,* 323 F.3d 1288, 1293 (10th Cir. 2003) (noting that the protected class under the ADEA is limited).   It is undisputed that Plaintiff was still 39 years old when he was not selected for the temporary supervisory position in Claim 1, and thus cannot satisfy the first prong of a prima facie case of age discrimination.  *See* Deft's SOF 17.  However, while Defendant contends that Plaintiff was still age 39 when he was not selected for the supervisory CBP officer in Claim 2, the evidence does not clearly support that fact and instead indicates that Plaintiff turned 40 three days before the selection was announced. *See* Doc. 37-9 at 73:18-25 and Doc. 37-11, No. 7).  It could be that the selection itself—that is, the alleged conduct—occurred before the selection was announced, but for summary judgment purposes any benefit of the doubt must be given to Plaintiff's version of the facts, which is that he turned 40 before he was not selected for the supervisory CBP officer position.   Thus, Plaintiff has satisfied the first prong of a prima facie case for Claim 2 in that he belonged to the protected class when the alleged conduct occurred.

2.    Non-selection for a temporary position was not adverse (Claims 1 & 3)

The Court has already found that non-selection for the positions underlying Claims 1 and 3 were not adverse employment actions, which means that Plaintiff cannot make out a prima facie case for either Claims 1or 3.

B.    Legitimate, Non-discriminatory Reasons (Claim 5)

33

Defendant contends that it had legitimate, non-discriminatory reasons for not selecting Plaintiff for the 2012 Supervisor Border Protection Officer Position in Claim 5.   Because this permanent position was competitive, the Certificate of Eligibles was used to list or rank candidates in order of their scores.

Director Hinojosa selected Officer Salgado (age 31) instead of Plaintiff (age 40) for one of four supervisor promotions.   The Court has already compared Plaintiff's resume with Officer Salgado's in the previous section addressing Plaintiff's gender and national origin discrimination claims, and the Court finds here also that Defendant's reason for selecting Salgado over Plaintiff were legitimate, justified and non-discriminatory.   The El Paso Port Director had included Officer Salgado, in concurrence with assistant port directors and watch commanders, included Officer Salgado in his four recommendations to Director Hinojosa based on the candidates' knowledge, skills and abilities.

Plaintiff contends Defendant's reasons were not legitimate, claiming that he ranked in the "top 20" (meaning 20 out of 24) in the Certificate of Eligibles.  This contention has no relevance in light of the undisputed fact that Salgado ranked 10 out of 24, and that Plaintiff does not dispute that he ranked lower than *any* of the selected candidates.

C.      Plaintiff Cannot Show But-For Causation

To prevail on an ADEA claim, a plaintiff has the burden of establishing that age was a determining factor in the employer's challenged decision. The plaintiff need not prove that age was the sole reason for the employer's acts, but he must show that age made the difference in the employer's decision.  *Greene v. Safeway Stores, Inc*., 98 F.3d 554, 557 910th Cir. 1996).  Unlike Title VII, which has been amended to explicitly authorize discrimination claims where an improper consideration was "a motivating factor" for the adverse action, see 42 U.S.C. §§

34

2000e-2(m) and 2000e-5(g)(2)(B), the ADEA does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor. *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343, 2345 (2009). Thus, an ADEA plaintiff seeking to hold an employer liable must show that that alleged animus was a "but-for" cause of the adverse employment action, that is, it was the factor that made a difference. *See Simmons v. Sykes Enterprises, Inc.*. 647 F.3d 943, 949 (10th Cir. 2011) (citing *Jones v. Oklahoma City Public Schools*, 617 F.3d 1273, 1277 (10th Cir. 2010); *Lujan v. Walters*, 813 F.2d 1051, 1057 (10th Cir. 1987) (holding that, in a case arising under the federal employer provision, the jury was properly instructed that age must be the but-for cause of the employer's decision).

The Court has already determined that Plaintiff has not satisfied a prima facie case on Claims 1 and 3. However, Claims 1, 2, 3 and 5 all suffer from the same failure on this last but critical inquiry, which is a failure to show that age was the but-for cause of his non-selection for each of those positions (even assuming his non-selection could be considered adverse employment actions).

It is undisputed that none of the selecting officials knew the ages of any of the candidates for the positions for which Plaintiff was not selected. *See* Deft's SOF 18 (unawareness of ages for Claim 1); Deft's SOF 47 (unawareness of ages for Claim 2); Deft's SOF 63 (unawareness of ages for Claim 3); and Deft's SOF 93 (unawareness of ages for Claim 5).

Plaintiff presents no evidence of the "but-for" causation that is critical to an age discrimination claim. For example, for Claim 5, he claims that Director Hinojosa must have been aware of his age due to her recollection of Plaintiff's EEO complaint, but he offers no evidence to challenge Hinojosa's statement either that she was unaware of the ages of other

candidates listed on the Certificate of Eligibles or that Plaintiff's age and prior EEO activity had no bearing on Director Hinojosa's hiring decision.  Plaintiff also claims that Hinojosa discriminated against him based on age because Salgado is much younger than Plaintiff and because Salgado never filed a complaint against the Defendant.   This statement is conclusory and fails to suggest a connection between the decision not to promote Plaintiff, and either his age or his filing of an EEO complaint.  Even though the Court is required to view the facts favorably to Plaintiff here, Plaintiff is still required to present some evidence, usually circumstantial, which would allow a fact finder to infer that Plaintiff was not selected for the temporary jobs in Claim 1 and 3, or the supervisory positions in Claims 2 and 5.  In response to the overwhelming evidence presented by Defendant that there is no basis to his age discrimination claims, Plaintiff comes up with nothing but mere suspicions.  He presents no facts at all to support any of his contentions that age had anything to do with Defendant's actions, much less that it was the "but for" cause of those actions.

For these reasons, Plaintiff's age discrimination claims fail (Claims 1, 2, 3 and 5).

## III.    Retaliation Claims (Claims 4 & 5)

Plaintiff's retaliation claim under Title VII and the ADEA are based on allegations of his duties and desk location in October/November 2011 and his non-selection for supervisor in March 2012.

### A.    Prima Facie Case for Retaliation

Title VII prohibits retaliation against an employee for opposing any practice made unlawful by Title VII or for asserting a charge, testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Title VII.  42 U.S.C. § 2000e-3(a); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998).  The ADEA similarly

36

proscribes retaliation under 29 U.S.C. §623(d).  The anti-retaliation provisions of Title VII and the ADA "are materially identical" to the ADEA's provisions.  *See Sanchez v. Denver Public Schools*, 164 F.3d 527, 533 (10th Cir. 1998) (setting out identical framework for prima facie case for Title VII and ADA); *Mattioda v. Whit*e, 323 F.3d 1288, 1293 (10th Cir. 2003) (Title VII case).

A plaintiff claiming unlawful retaliation for asserting a Title VII or ADEA claim also bears the initial burden of establishing a prima facie case and to do so must show that: (1) he was engaged in opposition to Title VII or ADEA discrimination; (2) that he suffered an action that a reasonable employee would have found materially adverse, either after or contemporaneously with the employee's protected action; and (3) a causal connection exists between his opposition and the employer's adverse action.  *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1264-65 (10th Cir. 2007); 42 U.S.C. § 2000e-3(a). *See Gunnell,* 152 F.3d at 1262–63; *Jeffries,* 147 F.3d at 1231; *Sanchez v. Denver Public Schools*, 164 F.3d 527, 533 (10th Cir. 1998).  To establish the third element, a plaintiff "must establish that his or her protected activity was a "but-for" cause of the alleged adverse action by the employer."  *See Barrett v. Salt Lake County*, 754 F.3d 864, 868 (10th Cir. 2014) (noting recent Supreme Court decision holding that Title VII retaliation lawsuits must employ the "but for" causation standard, rather than the "mixed motive" standard) (relying on *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* ⸺ U.S. ⸺, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013)); *Gross v. FBL Fin. Serv., Inc.,* 557 U.S. 167 (2009) (reconciling causation standard for Title VII retaliation claims with standard set in ADEA context).

Additionally, Plaintiff must show that the management personnel responsible for making the decision had knowledge of his protected acts. *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993); *Petersen v. Utah Dep't of Corr.,* 301 F.3d 1182, 1189 (10th Cir. 2002).

It is undisputed that Plaintiff's formal EEO complaints qualify as activity protected under both Title VII and the ADEA.

>    1.    Alteration of desk location/duties does not constitute an adverse action

A close period of time between protected activity and adverse action raises an inference of illegal motive. *Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1204 (10th Cir 2008). Plaintiff submitted a formal EEO complaint on September 11, 2011 based on his non-selection for the June 20, 2011 temporary supervisor position. This temporal proximity is close enough to raise an inference of causation for the alleged adverse action that occurred in October 2011. However, it is not enough to meet the second prong of a prima facie retaliation case because the Court has already found that the two weeks within which Plaintiff was assigned to a desk in the Property office, and the slight modification of his job duties to include Property officer duties during that time do not constitute adverse employment actions. *See* discussion above, on gender discrimination claims.

Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006) (Reassignment of job duties is not automatically actionable).

Plaintiff claims that APD Chavez did not make it clear to him when he started the assignment that he would only be working out of the Property office for two weeks, but he does not offer any evidence supporting the inference that Chavez *did* intend the assignment in the officer to last longer than two weeks. Nor does Plaintiff know if Chavez meant the property/fleet duties to be part of Plaintiff's rotation through the different administrative officer duties. Deft's

SOF 77.  Nevertheless, Plaintiff insists that Chavez would probably have kept him using the Property office were it not for Plaintiff's complaint to APD Hutterer, who "corrected" what Plaintiff perceives to be a retaliatory act by Chavez.   The record contains no evidence that this occurred, either in the form of a statement by Hutterer or any other kind of admissible evidence, much less that Hutterer was aware of any retaliatory motive on the part of Chavez.  Plaintiff promises that there will be future testimony to prove that he is correct about Chavez' motives, *see* Doc. 43 at 47 ("Testimony from SCBPO Harp will show that the females in the administrative officer had advised him that they had come to a decision not to have Plaintiff in that office" and thereafter Chavez told Plaintiff that he would not be in that office).  As the Court has already noted, testimony Plaintiff plans to present at trial is too late to preclude summary judgment now.

In a similar vein, Plaintiff describes conversations that allegedly took place between Hutterer and Plaintiff; a conversation between APD Chavez and Gallegos and Plaintiff where Chavez stated that Gallegos and Plaintiff should not be part of this administrative position and that they got the assignment only because of their seniority; and another conversation between Chavez and another employee, CBP Tech America Quintana purportedly to show that Plaintiff was doing tasks involving money transactions.  Doc. 43 at 49-50.[5]   Aside from the obvious hearsay problems plaguing these alleged conversations (which could have been rectified by the submission of affidavits or declarations), it is also not clear how any of these conversations fit into the context of Plaintiff's retaliation claim.   These purported facts do not alter the Court's finding that the alteration of Plaintiff's desk location and duties do not qualify as adverse actions.

---

[5]  Plaintiff states that "[i]n June 2012, APD Chavez approached CBP Tech America Quintana and kept asking her if she needed Nubia Teran's help with the money transactions being that she had experience.  Quintana advised APD Chavez that she was not needed, since Plaintiff was already doing such tasks."  Doc. 43 at 50.

2.     No temporal proximity between protected activity and alleged adverse action (Claim 5)

Unlike Claim 4, in Claim 5 there is insufficient temporal proximity to infer causation between Plaintiff's submission of his amended EEO complaint in November 2011 and Plaintiff's March 2012 non-selection for the supervisor position.  *See Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) ( six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient).

B.     Defendant's Legitimate, Non-Discriminatory Reasons (Claims 4 & 5)

Defendant has supplied the requisite legitimate reasons for its actions in placing Plaintiff in the Property office when he first got the "bid and rotation" assignment.  Plaintiff concedes that when he first started the assignment, the three desks in the Administrative Office were used by a technician, a pregnant border protection officer on light duty and a STEP student.[6]  After the border protection officer left on maternity leave in November 2011, APD Hutterer assigned Plaintiff to the desk she occupied.  These are legitimate, non-discriminatory reasons for temporarily assigning Plaintiff to the Property office.

C.     Pretext

Retaliation claims also follow the shifting burden analysis set forth in *McDonnell-Douglas.  Stover v. Martinez,* 382 F.3d 1064, 1070 -1071 (10th Cir. 2004).   Even assuming Plaintiff has met a prima facie case for retaliation, he still retains the burden of presenting facts which show retaliatory motive in order to preclude summary judgment.[7] *See Trujillo-Cummings*

---

[6]  There is no explanation for this acronym.

[7] Plaintiff incorrectly assumes that meeting a prima facie case entitles him to a trial on the merits, forgetting that the prima facie case is only the initial part of the shifting burden analysis that must be considered here.  *See*

*v. Public Service Co. of New Mexico*, 1999 WL 169336, at *2 (10th Cir. 1999) (establishing a

prima facie case does not meet a plaintiff's ultimate burden of showing illegal discrimination;

courts still apply shifting-burden framework to retaliation claims) (citing *McDonnell Douglas*

*Corp. v. Green,* 411 U.S. 792, 802-03 (1973), *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th

Cir.1997) (FMLA retaliation) and *Berry v. Stevinson Chevrolet,* 74 F.3d 980, 985 (10th

Cir.1996) (Title VII retaliation)).

1.    <u>No evidence of retaliatory motive - Claim 4</u>

Plaintiff claims that APD Chavez acted out of retaliatory motive when Chavez advised

him that he would work in the Property office, because of Plaintiff's submission of a formal EEO

complaint in September 2011.  Plaintiff contends that he has "clearly showed that he was

discriminated by the Defendant" (Doc. 43 at 43), yet has presented no evidence to support this

contention.  Plaintiff concedes that it is "unclear" whether Chavez knew about the EEO

complaint, *see* Doc. 43 at 49, yet contends that Chavez was at the El Paso office when Plaintiff

had his EEO mediation.

However, Chavez did not attend the mediation at the El Paso office, and the fact that

Chavez may have seen Plaintiff in the lobby of the El Paso office does not infer knowledge on

Chavez' part that he knew Plaintiff was engaged in protected activity.   Plaintiff also surmises as

"unlikely" that Director Hinojosa (who *did* attend the mediation) would not talk to APD Chavez

about an EEO issue concerning the Santa Teresa Port of Entry based on her role in mediating the

EEO process, but he offers nothing but speculation to support this belief.  Even if Director

Hinojosa may have consulted with Chavez prior to mediation (for which there is no evidence

---

Doc. 43 at 51. In fact, the *McDonnell-Douglas* analysis is usually reserved for summary judgment and drops out of consideration for trial.  *See Kendrick v. Penske Transportation Serv., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000).

presented), such consultation prior to mediation of the EEO process does not suggest that Chavez knew about the EEO complaint in October/November.

Plaintiff's offering is based on mere conjecture, which is insufficient to rebut Defendant's legitimate reasons and show pretext based on retaliatory motive. *See Anderson v. Coors Brewing Co.,* 181 F.3d 1171 (10th Cir. 1999) (conjecture insufficient to defeat summary judgment in ADA retaliation case).

2.    <u>No evidence of retaliatory motive – Claim 5</u>

Director Hinojosa acted as the management representative in Plaintiff's August 2011 EEO mediation. Five months later, she filled one of the four supervisory positions with CBP Officer Salgado. Aside from the fact that the temporal proximity is insufficient to create a causation inference, there is no evidence to support even a hint of pretext for a retaliatory motive by Director Hinojoso.

Defendant points out that Plaintiff was not selected for future supervisory promotions by other selecting officials, absent any claims of discrimination, in October 2012, June 2014 and November 2014. Those selections were based on the Certificates of Eligibles, as were the positions underlying Claim 5.

Because Plaintiff has failed to either meet a prima facie case, or assuming he has met a prima facie case, has not shown any evidence to suggest implausibility, inconsistencies or weakness in Defendant's legitimate reasons for its actions (that is, a failure to show evidence of pretext), Defendant is entitled to summary judgment on Plaintiff's claims of retaliation under Title VII and the ADEA.

## IV. Hostile Work Environment Claim

To establish a hostile work environment claim, Plaintiff must show that under the totality

of the circumstances: 1) the harassment was pervasive or severe enough to alter the terms,

conditions, or privileges of employment, and 2) the harassment was based on race, national

origin, gender, age or retaliation, or stemmed from such animus. *Bolden v. PRC, Inc*., 43 F.3d

545, 551(10th Cir. 1994). Plaintiff must show that the harassment is both objectively and

subjectively offensive, and that it rises to some level of substantiality. *Faragher v. City of Boca

Raton*, 524 U.S. 775, 786 (1998); *Bolden v. PRC Inc*., 43 F.3d 545, 551 (10th Cir.1994) (citing

*Meritor Sav. Bank, F.S.B. v. Vinson*, 477 U.S. 57, 67 (1986)).

A.      Appropriate Legal Standard

Defendant objects to the analysis used by Plaintiff on his hostile environment claims, and

contends that the Court should not consider the five claims in the aggregate as a basis for his

hostile environment claim when considering the "totality of the circumstances."  *See* Doc. 37 at

30.  There is some support to the view that the identical acts of alleged discrimination and

retaliation cannot form the basis for a plaintiff's hostile environment claims, unless there is some

escalation of those claims.  *See, e.g., Trujillo-Cummings v. Public Service Co. of New Mexic*o,

1999 WL 169336, at *2 (10th Cir. 1999) (increase in retaliatory acts can be basis for hostile

environment claims). Defendant relies on a District of Columbia opinion which clearly precludes

such conversion of claim theories because it recognizes a distinction between discrete acts

constituting discrimination or retaliation claims and a hostile work environment claim:

> . . . [C]obbling together a number of distinct, disparate acts will not create a
> hostile work environment. For example, if an employee is discriminatorily
> denied ten promotions over a period of time, that pattern of conduct may give
> rise to ten separate claims under Title VII, but it would not create a hostile work
> environment claim based on pervasive intimidation, insult and ridicule.

*Rattigan v. Gonzales*, 503 F.Supp.2d 56, 82 (D.D.C., 2007).[8]  On the other hand, the Court's

inquiry has unearthed cases that do not appear adverse to a plaintiff alleging a hostile

environment claim based on the same discrete acts that form the basis for a discrimination claim,

although the issue was not directly addressed.   *See Stover v. Martinez,* 382 F.3d 1063 (10th Cir.

2004) (noting that the district court analyzed Plaintiff's claims of retaliation for her EEO

complaints "both as separate adverse employment actions and, taken in the aggregate, as

constituting a hostile work environment . . . ."  *Id.* at 1071; *see also Baird v. Gotbaum,* 662 F.3d

1246, 1252 (C.A.D.C. 2011) ("although a plaintiff may not combine discrete acts to form a

hostile work environment claim without meeting the required hostile work environment standard,

neither can a court dismiss a hostile work environment claim merely because it contains discrete

acts that the plaintiff claims (correctly or incorrectly) are actionable on their own"); *Penry v.*

*Fed. Home Loan of Topeka,* 155 F.3d 1257, 1262(10th Cir. 1998) ("the very term 'environment'

indicates that the allegedly discriminatory incidents should not be examined in isolation").

    Plaintiff does not respond to this issue at all, and in the end it is not necessary to resolve

the contours of the legal standard because Plaintiff's hostile environment claim fails even when

considering the five alleged claims in the aggregate.   A hostile environment plaintiff must show

not only that *he* believed the conduct was severe enough to create an abusive or hostile

environment; he must also demonstrate that the harassing conduct was sufficiently severe that a

reasonable person would find the work environment abusive or hostile.  *Hicks v. Gates Rubber*

*Co.,* 833 F.2d 1406, 1415 (10th Cir. 1987).  Also, in a hostile environment context, the word

"pervasive" is not a counting measure; the number, sequence, and timing of the conduct, and the

---

[8] Defendant also relies on *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002), which the Court finds
not relevant, because in that case the issue was whether hostile environment claims should be considered separate
and discrete acts for purposes of determining what acts could be considered during a specific statutory limitations
period.  The instant case does not involve a consideration of which Plaintiff's claims occurred outside a particular
filing period.

nuances of an environment that each instance of discriminatory behavior imposes are also important factors.  *Id.*

      B.    <u>Analysis</u>

Plaintiff's hostile environment claim fails under the "severity" as well as "pervasive" prongs, and what he considers to be "severe" and "pervasive" would not be considered as such by a reasonable fact finder.   There is no evidence that he was subjected to an objectively abusive environment.  Part of the problem with this claim is that there is no direction by Plaintiff as to which specific conduct (or which one of the five claims) form the basis for the hostile environment claim.  In applying the relevant legal standard to the facts in *all* of Plaintiff's five claims, none of them have a sufficient factual basis to withstand summary judgment.

Plaintiff directs his hostile environment claim at APD Chavez, asserting that Chavez created a hostile environment by placing him in the property room.   However, Chavez was not the selecting official for any of the temporary positions in Claims 1 and 3, or for the permanent supervisory positions in Claims 2 and 5.   Plaintiff claims that Chavez "had influence" in the selection underlying Claim 1 (Doc. 43 at 26, 34), but presents no evidence to support this claim.

As to Claim 3, Plaintiff alleges that APD Chavez failed to forward his application to Hutterer for the lateral temporary assignment, but there is no evidence of this either except for Plaintiff's alleged hearsay of conversations between himself and Chavez, and between Chavez and Ms. Gallegos (and it is unclear how Plaintiff came to know of these conversations).  *See* Doc. 43 at 29.

As part of the harassing conduct in Claim 4, Plaintiff contends that after getting the administrative assignment through the "bid and rotation" process, APD Chavez told Plaintiff to use the desk in the property room, and that Plaintiff had to clean the clutter out.  However,

Plaintiff was located in the property office for about two weeks, and during that time, Plaintiff still had a desk and computer as well as access to the databases he needed to perform his duties. Modifying Plaintiff's duties as an Administrative Officer to include those of Property and Fleet cannot be considered harassing conduct that is either severe or pervasive, particularly in light of the fact that it lasted for about two weeks. *See Smith v. Yarrow,* 2003 WL 22400730, at *10 (6th Cir. 2003) (*de minimis* retaliatory conduct is not actionable). Plaintiff testified in his deposition that he perceived "insult" and "ridicule" by Mr. Chavez when Chavez spoke with Plaintiff and Ms. Gallegos about being administrative officers and that Chavez tried to "write him up" for using the database access when Plaintiff needed access to carry out all of his administrative duties. Doc. 43 at 31.[9] These allegations are insufficient to constitute an abusive environment.

Claim 5 does not involve Mr. Chavez at all, nor does Plaintiff mention Chavez in this claim. Chavez was not the selecting official, and provided a positive reference check for Plaintiff.

No reasonable fact finder could consider any of Plaintiff's allegations, even in the aggregate, to be severe and pervasive workplace harassment. Defendant cites to a Tenth Circuit decision that contains comparable petty workplace annoyances which the Tenth Circuit found insufficient to support a claim for hostile work environment. In *Trujillo,* the plaintiff complained that his employer documented improprieties in his job performance, criticized and checked his work, sent him memos requesting forms, instructed him to cancel a request for leasing space in a building, refused to refurbish a building he found to operate his program, denied his request to attend a leadership program for Hispanics, failed to include him as one of the University representatives to the Latin American Educational Fund Anniversary dinner, required him to

---

[9]  Plaintiff presents no evidence regarding this "write up." Also, Plaintiff does not dispute the fact that APD Chavez gave Plaintiff full access to all databases to carry out his administrative duties. *See* Def't's SOF 78.

bring a final budget for one of his programs to a meeting, excluded him from part of the

budgetary process, placed a corrective action in his personnel file that warned him that he needed

to improve his attendance, instructed him that he should not offer employment positions without

involving his supervisor, and told him not to produce or distribute the a program without first

presenting it to his supervisor for review and approval. *Trujillo v. University of Colorado Health

Sciences Center*, 157 F.3d 1211, 1213-14 (10th Cir. 1998).  Even so, the Tenth Circuit rejected

Plaintiff's claim of hostile environment, instead concluding that "[t]he hostile work environment

that Plaintiff portrays is simply a work environment that exhibits the monitoring and job stress

typical of life in the real world." *Trujillo,* 157 F.3d at 1213-14.  Like the plaintiff in *Trujillo,*

Plaintiff is complaining of the hassles and annoyances that are part and parcel of the workplace.

He was not selected for the two temporary positions in Claim 1 because someone else had

experience in the two criteria for the job that he did not have; he was not selected for the

temporary assignment in Claim 3 because he did not submit an application, and he was not

promoted to the supervisor positions in Claims 2 and 5 because he ranked lower than the

candidates who did get the position.  Finally, while Plaintiff *did* get the bid and rotation

assignment in Claim 4, he had to work in a small office for two weeks with an insignificant and

very temporary adjustment to his duties.

These complaints are the stuff of life and work, but do not support a claim for hostile

work environment.

## CONCLUSION

In sum, the Court finds and concludes that Plaintiff cannot establish a prima facie case for

gender or national origin discrimination in Claims 1, 3 and 4 under Title VII.  Plaintiff has not

shown any evidence of pretext for Claims 1, 2, 3 and 4 (assuming Plaintiff has made out a prima

facie case for Claim 2) in responding to Defendant's legitimate, non-discriminatory reasons for actions taken.

Plaintiff cannot show that he was discriminated based on age when he was not selected for the positions underlying Claims 1, 2, 3 and 5 because he has presented no factual dispute suggesting that his age was the "but for" cause of his non-selection.

Plaintiff's claims of retaliation fail because he has shown no evidence inferring or suggesting an impermissible retaliatory motive.

Defendant's alleged conduct underlying Plaintiff's claim of hostile work environment, even when considered together, is not either pervasive or severe enough to alter the terms or conditions of Plaintiff's employment,

For all of his claims of discrimination and retaliation, Plaintiff has not met his burden to present evidence from which a reasonable fact finder could infer either discriminatory or retaliatory intent sufficient to withstand summary judgment.  Plaintiff has not presented any facts, testimony or other evidence to dispute any of the material facts presented by Defendant on his discrimination and retaliation claims, or on his claims of hostile environment.  A reasonable juror would have no basis to find in favor of Plaintiff on any of his claims, and therefore Defendant is entitled to summary judgment on all of Plaintiff's claims.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment **(Doc. 37)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

A Rule 58 Judgment shall be entered separately.

_____

UNITED STATES DISTRICT JUDGE